UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CHERYL BALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| | ) |
| UNUM LIFE INSURANCE | ) |
| COMPANY OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW Plaintiff, Cheryl Ball, and for her claims and causes of action against Defendant, Unum Life Insurance Company of America, states as follows:

## PARTIES

1. Cheryl Ball ("Ball") is a resident and citizen of the State of Kansas.

2. Defendant Unum Life Insurance Company of America ("Unum") is an out-of-state insurance company authorized to do business in the State of Kansas. The Commissioner of the Kansas Department of Insurance is authorized to accept service of process on behalf of Unum.

## JURISDICTION AND VENUE

3. Ball brings her claim pursuant to the Employment Retirement Income Security Act ("ERISA") and 29 U.S.C. § 1001 *et seq*.

4. This dispute is governed by a welfare benefits plan and its policy documents, as well as applicable federal law regarding employer provided benefits. 29 U.S.C. § 1132(e)(1).

1

5. This Court also has subject matter jurisdiction pursuant to the general jurisdictional statute for civil actions arising under federal law. 28 U.S.C. § 1331.

6. Venue lies in the District of Kansas under 29 U.S.C. § 1332(e)(2), as the breach occurred in this district, and because the welfare benefits plan is administered in this district.

7. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to this action occurred within this judicial district.

## INFORMATION REGARDING TRIAL

8. No jury trial is allowed under ERISA law.

9. Trial is to be held in Kansas City, Kansas.

## STATEMENTS OF FACT

10. Olathe Health System ("OHS") employed Ball as a Central Processing Technician.

11. Ball remained actively at work until January 13, 2021.

12. During her employment, Ball was an "active, full time employee working in the United States."

13. During her employment, Ball began to suffer from a number of health conditions, including ongoing complications from herniated disks, an automobile accident, fractured right wrist, left wrist tenosynovitis, neuropathy in right arm, bladder incontinence anxiety, depression, bilateral ankle arthritis, shoulder pain, and PTSD.

14. OHS sponsored a group long-term disability ("LTD") benefits plan ("Plan") for its participating employees.

15. The Plan constitutes employee welfare benefit plans as defined by 29 U.S.C. § 1002 (1).

16. The Plan offered disability benefits to qualifying OHS employee Plan participants.

17. At all relevant times, Ball has been a participant and covered person under the terms of the Plan.

18. OHS is the administrator of the Plan.

19. The Plan's disability provisions are insured by a policy written by Unum.

20. OHS delegated or attempted to delegate the function of issuing LTD claim determinations to Unum.

21. OHS and Unum entered into an administrative services contract through which OHS paid Unum for acting as claims administrator.

22. Ball attempted and failed working for the last day on January 13, 2021.

23. After ceasing work, Ball through counsel, requested all plans in which she was enrolled as of her last day working.

24. OHS complied with the request and produced among other plan documents, the LTD certificate, LTD summary, and LTD policy.

25. Following this document production, Ball applied to Unum for long-term disability ("LTD") benefits, submitting a signed claim form, a signed Authorization to Release Personal Information, a signed Authorization to Disclose Health Information to My Employer, a Representation Authorization, and a list of her health care providers. She also provided proof to Mutual that she had applied for SSD benefits.

26. During her claim pendency, Unum repeatedly wrote to Ball advising her that the LTD claim had been received but that more information may be needed to make a decision on her claim.

27. Upon request, Ball supplied Unum with more information repeatedly including but not limited to authorizations, medical records, completed claim forms, and statements from her employer and her doctor.

28. On March 22, 2024, Unum denied Ball's claim.

29. On March 25, 2024, Ball requested a copy of her claim file.

30. The Plan and Policy articulate the conditions under which a Plan participant is entitled to LTD benefits.

31. The Policy defines the term "Disabled" as follows:

> **HOW DOES UNUM DEFINE DISABILITY?**
>
> You are disabled when Unum determines that:
>
> - you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
> - you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.
>
> After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience.

32. The Policy defines the term "Material and Substantial Duties" as follows:

> **MATERIAL AND SUBSTANTIAL DUTIES** means duties that:
>
> - are normally required for the performance of your regular occupation; and
> - cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Unum will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.
>
> **REGULAR OCCUPATION** means the occupation you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

33. Both ERISA and the Policy itself require such denials to provide specific information, including:

    a. The specific reason(s) the claim was denied.

    b. Specific reference to the Policy provision(s) on which the denial was based.

    c. Any additional information required for the claim to be reconsidered, and the reason this information is necessary.

    d. If the case of any claim for a disability benefit, identification of any internal rule, guideline or protocol relied on in making the claim decision, and an explanation of any medically-related exclusion or limitation involved in the decision.

    e. A statement regarding the right to appeal the decision, and an explanation of the appeal procedure, including a statement of the right to bring a civil action under Section 502(a) of ERISA if the appeal is denied.

34. On September 11, 2024, Ball appealed Unum's denial.

35. In her appeal, Ball provided medical evidence supporting her disability.

36. On July 2, 2021, Ball underwent x-ray of her left risk finding a suggestion of soft tissue swelling dorsally.

37. On October 11, 2021, Ball presented to Dr. Lane's office for treatment of chronic pain and flare up in her arm and neck. Dr. Lane called her in pain medication for her chronic pain.

38. On November 22, 2021, Ball suffered a fall and presented to the Emergency Department with a black eye, swelling in the right hand and wrist, and obvious wrist deformity. X-rays were taken and revealed a comminuted impacted distal metaphyseal fracture with intra-articular extension. Ball was splinted and referred to orthopedics.

39. On December 1, 2021, Ball was seen by Dr. John Gillen, for orthopedic follow-up on her wrist fracture. There was moderate swelling at the wrist and all digits of her fingers. She was to undergo open reduction internal fixation. X-rays revealed an unchanged distal

     radius fracture. Dr. Gillen completed FMLA paper work opining that Ball was incapacitated until January 1, 2022 and must undergo right wrist fracture repair surgery.

40. On December 8, 2021, Ball underwent open reduction internal fixation of right distal radius intra-articular fracture.

41. On December 27, 2021, Dr. Gillen completed an attending physician statement finding that Ball was unable to lift, carry, push, or pull with the right upper extremity and that she was unable to return to work until 01/10/22.

42. On 12/27/21, Ball presented for a follow-up visit with John Gillen, MD, post right wrist surgery. She reported intermittent shooting pain at the right wrist and some swelling of the hands. She was to continue wearing an immobilizer and Ace wrap and to remain off work until her next appointment.

43. On 01/10/22, follow-up visit with John Gillen, MD, Ball presented in a wrist brace which she reports wearing eight hours per day. Ball reported occasional shooting pain at the wrist and intermittent swelling of the hand. On examination she lacked full extension of the wrist. Dr. Gillen suggested Physical Therapy.

44. On January 12, 2022, Ball presented to Dr. Melissa Lane's office for treatment of wrist pain and chronic neck pain. Dr. Lane prescribed her pain medication for her chronic pain.

45. On August 18, 2022, Ball presented to Dr. Lane's office for treatment of urinary incontinence and wetting herself at night. Ball also reported injuring herself on July 9, 2022, when she rolled both ankles and reported bruising and swelling. She also reported continued neck pain, and anxiety.

46. On September 1, 2022, Ball presented to Dr. Christopher Bagby's office for treatment of chronic left wrist pain and was diagnosed with De Quervain's tendonitis. On examination,

      Ball had tenderness at the left first dorsal compartment and a positive Finkelstein's test. Dr. Bagby recommended cortisone injection for the pain which Ball underwent.

47. On November 18, 2022, Ball presented to Dr. Lane's office for treatment of depression and chronic neck pain. Dr. Lane changed her prescription of Effexor to 225mg.

48. On January 30, 2023, Ball underwent a Psychiatric Evaluation with chief complaints of depression and anxiety. A mental status examination notes that Ball had an angry mood and sullen and constricted affect. Her speech was slow but coherent. She struggled with serial sevens and there was slightly impaired delayed memory. The examination results determined that Ball had an overall mild impairment with functionality.

49. On February 9, 2023, Ball presented to Dr. Lane's office for treatment of anxiety, depression, and chronic neck pain. Dr. Lane refilled her medications.

50. On July 11, 2023, Ball again presented for a Psychiatric Evaluation. Testing indicated that she continued to have mild impairment in functional capacity.

51. On August 7, 2023, Ball presented to Dr. Lane's office for treatment of chronic pain and heightened anxiety. Dr. Lane added Wellbutrin for her anxiety.

52. On November 10, 2023, Dr. Lane completed an attending physician statement opining that Ball had lifelong restrictions and limitations. Dr. Lane opined that Ball was unable to lift greater than 5 pounds due to right wrist pain. She also has chronic neck pain radiating to the arm which prevents her from lifting objects overhead.

53. On December 15, 2023, Ball presented to Dr. Stephen Hiatt's office for treatment of right wrist pain. On examination there was severe edema at the wrist, and x-rays showed severe volar prominence of the distal margin of the plate. Dr. Hiatt recommended right wrist volar implant removal and open carpal tunnel release.

54. On January 22, 2024, Ball underwent right carpal tunnel surgery and removal of the deep implant in her right wrist at Surgicenter of Johnson County.

55. On July 2, 2024, Ball was seen by Gonzales, NP for left foot pain and swelling. On examination of the left 1st MTP joint there was a form, raised, erythematous, and tender nodule to the dorsal aspect of the foot and localized erythema from mid-foot down toward the toes.

56. On August 5, 2024, Ball presented to urgent care for treatment of foot pain and foot swelling and shoulder pain. The urgent care discovered degenerative of the cervical spine at baseline and was referred to orthopedic.

57. On August 16, 2024, Ball presented to Dr. Dickson's office for an X-ray of shoulder and acute right shoulder pain. Dr. Dickson referred her to Physical Therapy and scheduled a follow-up appointment on September 24th to discuss the findings of her x-ray.

58. In December 2024, the Social Security Administration found Ball totally disabled and awarded benefits.

59. Ball has at all relevant times met the definition of "Disability" under the Plan and is entitled to benefits.

60. Ball timely appealed Unum's denial of her claim for benefits.

61. In response to Ball's appeal Unum referred her claim for medical review to Dr. Kevin Kohan.

62. Dr. Kohan is a third-party peer review doctor.

63. Dr. Kohan did not identify what company he was affiliated with in his report.

64. Dr. Kohan found Ball unrestricted from performing her former occupation.

65. Dr. Kohan did not perform a function-by-function analysis in his review.

66. Dr. Kohan did not meet with, treat, or otherwise interact with Ball at any time during his review.

67. On January 6, 2025, Unum upheld its denial of benefits.

68. Ball has exhausted her administrative remedies and Unum refuses to take further action in connection with her claim.

## CAUSES OF ACTION

### COUNT I
### 29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF BENEFITS

69. Ball realleges the preceding paragraphs as if fully set forth herein.

70. Ball is entitled to all unpaid and accrued LTD benefits, as Unum:

    a. Made an unfavorable decision without substantial evidence;

    b. Failed to properly consider Taylor's medical impairments and resulting limitations; and

    c. Issued an unfavorable decision that was arbitrary and capricious.

71. Unum has not satisfied its obligation to pay Ball's LTD benefits.

72. Unum denied LTD benefits when the applicable medical record supports upholding LTD benefits.

73. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), Ball prays for judgment against Unum for unpaid LTD benefits, attorney's fees, costs, and prejudgment interest.

### COUNT II
### 29 U.S.C. § 1132(a)(3) – BREACH OF FIDUCIARY DUTY

74. Ball realleges the preceding paragraphs as if fully set forth herein.

75. Under 29 U.S.C. § 1002(21)(A), a fiduciary is one who:

> "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property or such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

76. 29 U.S.C. § 1104(a)(1)(A) describes the fiduciary standard of care:

    > "a fiduciary shall discharge her duties with respect to a plan solely in the interest of the participants and beneficiaries and – for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

77. Unum, the Plan's designated claims administrator, is a fiduciary.

78. Unum participated in and benefitted from the Plan as previously indicated.

79. Unum's claims management practices are motivated by financial incentives in its administrative services agreement with HCA.

80. As the payor of benefits and the entity responsible for exercising discretion in claims administration, Unum operates under an inherent conflict of interest.

81. A higher than marketplace quality standard, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008) governs the actions of a fiduciary.

82. Unum breached its fiduciary duty in:

    a. Failing to comply with its internal guidelines and claims handling procedures. Its claim handlers did not comply with documented instructions involving the administration of disability claims, including its procedures involving coverage and eligibility determinations;

    b. Refusing to administer the claim when the 180-day deadline was extended by National Emergency;

    c. Failing to properly administer the claim;

10

    d. Engaging in a structural conflict of interest by assuming the role of both claims administrator and payor of benefits;

    e. Failing to properly consider competent medical and vocational opinion evidence, and/or failing to specifically explain why it did not agree with such evidence;

    f. Failing to provide a copy of the applicable policy and documents; and

    g. Refusing to utilize fully executed authorizations to attempt to obtain all relevant evidence to Ball's claim for benefits;

83. Unum denied Ball's LTD benefits for the purpose of elevating its financial interests. In doing so, it breached its fiduciary duties.

84. Unum failed to discharge its duties solely in the interests of its participants and beneficiaries. It acted with both a conflict of interest and breached its fiduciary duty to both Ball and the Plan's participants and beneficiaries generally.

85. Unum's improper conduct demonstrates that ordinary relief under § 1132(a)(1)(B) is not an adequate remedy.

86. Unum's violations of regulations alone allow Ball the right to pursue any remedy under Section 502(a) of ERISA, including § 1132(a)(3). 29 C.F.R. § 2560.503-1(1)(2)(i).

87. Unum's violations of federal regulation also subject its decision to *de novo* review.

88. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(3), § 1109, and § 1132(a)(2), Ball prays for an order that Unum retrain its employees consistent with ERISA fiduciary obligations and federal regulations; for reformation of its services agreement with the plan administrator consistent with ERISA fiduciary obligations and federal regulations; for an injunction preventing further unlawful acts by Unum in its fiduciary capacity; for an equitable accounting of benefits that Unum has withheld; for the disgorgement of profits

enjoyed by Unum in withholding benefits; for restitution under a theory of surcharge; for the Court's imposition of a constructive trust; for an award of attorney fees; and for further relief as the Court deems just.

        Respectfully submitted,

        BURNETTDRISKILL, Attorneys

        By: /s/ Derrick A. Pearce
        Derrick A. Pearce, KS # 16752
        Benjamin R. Narrell, KS#79228
        103 W 26th Ave., Ste. 290
        North Kansas City, MO 64116
        P: 816.781.4836
        F: 816.792.3634
        dpearce@burnettdriskill.com
        bnarrell@burnettdriskill.com
        ATTORNEYS FOR PLAINTIFF